UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

SHAUN P. OXENDINE,

    Plaintiff,

v.

WEXFORD HEALTH SOURCES, INC. and
YONAS SISAY, M.D.,

    Defendants.

Civil Action No. TDC-16-3168

## MEMORANDUM OPINION

Shaun P. Oxendine, currently confined at Eastern Correctional Institution in Westover, Maryland, alleges that Defendants failed to provide him with adequate medical care, in violation of the Eighth Amendment to the United States Constitution. Pending before the Court is the Motion to Dismiss, or in the Alternative, Motion for Summary Judgment filed by Wexford Health Sources, Inc. ("Wexford") and Yonas Sisay, M.D ("Dr. Sisay").[1] For the reasons set forth below, the Motion, construed as a Motion for Summary Judgment, shall be granted.

## BACKGROUND

### I. Medical Treatment

On February 3, 2014, Oxendine, who had been assigned to Baltimore County Detention Center, underwent intake medical screening at the Maryland Reception and Diagnostic and Classification Center ("MRDCC"). At the time, Oxendine had a medical history of constipation, hypertension, hyperlipidemia, and gastroesophageal reflux disease. During the screening, Oxendine did not complain of either abdominal or hernia-related pain. The following day,

---

[1] The Clerk shall be directed to amend the docket to reflect the correct names of Defendants.

during a health assessment by Grace Emasealu, a nurse practitioner, he reported a history of gastrointestinal reflux, chronic constipation, and a right inguinal hernia. The nurse practitioner recommended that he continue to receive medication for esophageal reflux and Metamucil for constipation and that he increase his intake of fluids and the amount of fiber in his diet. During a chronic care visit on February 11, 2014 with Dr. Virenda Chhunchha, Oxendine did not report any nausea or vomiting, but told the doctor that Metamucil and Colace were ineffective to treat his chronic constipation. Dulcolax and magnesium citrate were then added to his medication regimen. On February 25, 2014, Oxendine was transferred from MRDCC to Jessup Correctional Institution ("JCI").

Oxendine's medical records reflect no complaints of abdominal pain or other gastrointestinal issues until April 16, 2014, when he was evaluated by Dr. Sisay during a chronic care clinic. In response to his request for medication to treat constipation, Dr. Sisay prescribed Lactulose and Metamucil. Then, on June 12, 2014, during a visit with Danielle Jones, R.N., Oxendine reported, "I think I have a stomach virus" and revealed that he had diarrhea, stomach cramps, and vomiting. Mot. Summ. J. Ex. 1, at 17, ECF No. 15. The nurse directed him to take Phenergan and Tylenol. Later that day, Lum Maximuangu, a nurse practitioner, examined Oxendine and found that he had abdominal pain, diarrhea, nausea, and vomiting but could not recall a trigger for the discomfort. The nurse practitioner diagnosed Oxendine as suffering from acute gastroenteritis, prescribed Tylenol and Promethazine, and advised Oxendine to refrain from work and heavy lifting and to take only clear liquids until the morning.

The next month, on July 4, 2014, Oxendine submitted a sick call request in which he reported hernia-related pain, among other issues. On July 11, 2014, during a visit with Dr. Sisay, Oxendine did not shown signs of bowel and bladder incontinence or abdominal tenderness.

Likewise, during a chronic care visit on August 18, 2014 with Dr. Bolaji Onabajo, Oxendine did not complain of any abdominal pain or issues other than constipation, for which he was continuing to take Dulcolax.

There are no further medical records reflecting complaints about abdominal issues until October 2014. On October 5, 2014, four days after he had submitted another sick call request Oxendine saw Nurse Maximuangu and complained of constipation and hernia-related pain. He reported that the Dulcolax did not help his constipation and requested milk of magnesia, which he was provided. Oxendine also complained of abdominal tenderness. Although the nurse could not palpate the hernia, a hernia belt was recommended. He was placed on a high fiber diet and directed to refrain from work and heavy lifting. On October 10, 2014, when Dr. Sisay evaluated Oxendine, he did not complain of incontinence or show signs of abdominal tenderness, but Dr. Sisay identified a small reducible hernia.

The following month, Oxendine's condition worsened. On November 2, 2014, Oxendine sought medical treatment after he reported nausea and vomiting that had begun overnight. He believed that his right upper abdominal quadrant was swollen and described his pain as a three out of ten, with ten being the highest. An examination revealed no swelling or tenderness in Oxendine's right upper abdomen. Oxendine agreed to eat breakfast but then vomited at the clinic. The nurse provided him with acetaminophen, an ice pack, Pepto Bismol, and Phenergan. However, his abdominal pain continued, and he vomited again. When Oxendine returned to the medical clinic, he had sharp pain in his upper right abdomen that occurred randomly and was aggravated by movement. The physician's assistant who examined him consulted with a doctor and sent Oxendine to the emergency room at Bon Secours Hospital ("BSH"). At BSH, Oxendine was diagnosed with acute cholecystitis and underwent successful surgery to remove his gall

bladder. On November 6, 2014, he was discharged and advised to resume his normal diet and medications, educated about surgical wound care, and advised to avoid strenuous activities.

Upon his return to JCI on November 7, 2014, he was evaluated by Nurse Maximuangu. Oxendine had no difficulty eating, the surgical site was cleaned and dressed, and there was no sign of infection. Oxendine did, however, report abdominal tenderness, and he was prescribed pain medication. He was then returned to the general population, at his request. On November 17, 2014, Oxendine complained to Dr. Sisay about abdominal soreness, but there was no nausea or vomiting, and his surgical incision had healed. Dr. Sisay refilled Oxendine's prescription for Tylenol 3 and requested a consultation for a post-surgical follow up visit.

Oxendine had a post-surgical follow-up visit at BSH on December 11, 2014. The BSH physician noted that the wound had healed well and that no follow up was required relating to the surgery, but recommended follow up for his inguinal hernia. On January 5, 2015, Dr. Sisay evaluated Oxendine and observed no abdominal tenderness, but he noted the reducible inguinal hernia and placed an order for a hernia belt for Oxendine. Oxendine continued to receive pain medication to address post-surgical issues. Since the January 5, 2015 visit, Oxendine has not voiced any complaints to medical staff about abdominal or hernia-related pain, other than minor pain at his surgical site. According to Dr. Sisay, where Oxendine has a small, reducible inguinal hernia with minimal to no symptoms, surgery is not medically necessary.

## II. Procedural History

On September 15, 2016, Oxendine filed this action pursuant to 42 U.S.C. § 1983. He alleges that, beginning on or about February to March 2014, he submitted a number of sick call requests complaining of pain in his abdomen and stomach. Oxendine asserts that he was misdiagnosed as having food poisoning, a stomach virus, and indigestion before he finally

underwent the surgery at BSH to remove his gall bladder. According to Oxendine, the surgery itself was delayed for 11.5 hours because Dr. Sisay had failed to answer a call from a nurse seeking authorization for emergency surgery.

Oxendine also claims that, following the surgery, he "could not use the bathroom, because [he] wasn't allowed the proper diet after surgery," and that nothing was done about his diet until August 2015, despite his complaints that processed foods were complicating his medical condition. Compl. ¶ 6, ECF No. 1. According to Oxendine, Dr. Sisay did not schedule a requested follow-up visit 60 days after the surgery at BSH to address continued bloating, pain, and a hernia. Moreover, he asserts that prison medical staff have not addressed his hernia or ongoing abdominal pain and swelling and that he has "lost the use of muscles on my lower right side." *Id.* ¶ 7.

Defendants have filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. They attached to their Motion Oxendine's medical records and an affidavit by Dr. Sisay. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Oxendine was sent correspondence notifying him that Defendants had filed a dispositive motion, the granting of which could result in the dismissal of his action. Oxendine was also informed that he was entitled to file materials in opposition to the Motion within 17 days from the date of that letter, and that his failure to file a timely responsive brief to illustrate, through accompanying affidavits or other evidence, a genuine dispute of material fact could result in the dismissal of his case or in the entry of summary judgment without further notice of the Court. Oxendine did not file a Response.

## DISCUSSION

Defendants seek dismissal of the Complaint or summary judgment in their favor on several grounds, including that: (1) Oxendine failed to state a plausible § 1983 claim as to Wexford, a private corporation; (2) Oxendine has failed to allege sufficient facts to support a claim against Dr. Sisay for deliberate indifference to a serious illness or injury; and (3) Defendants are entitled to summary judgment on the undisputed facts presented in medical records.

### I.     Legal Standard

Because Defendants have submitted evidence for the Court's review, and because Oxendine has not requested an opportunity for discovery, the Motion is construed as a motion for summary judgment. *See* Fed. R. Civ. P. 12(d). Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). The nonmoving party has the burden to show a genuine dispute on a material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

## II. Wexford

At the outset, Oxendine's claims against Wexford must be dismissed because he has neither alleged nor provided evidence to show that Wexford had a policy or custom that resulted in a deprivation of his constitutional rights. Section 1983 allows individuals to sue in federal court any person who violates their federally protected rights while acting under the color of law. 42 U.S.C. § 1983 (2012). The United States Supreme Court, in *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), concluded that local government entities are considered "persons" for the purposes of § 1983, but they cannot be held liable solely because they employ an individual who committed an unlawful act. *Id.* at 690–91. Rather, local governments can only be sued if the constitutional violation alleged results from a custom or policy of the local government. *Id.* This standard also applies to private companies that employ individuals acting under color of state law, such as special police officers or prison medical personnel, who allegedly commit unlawful acts. *See Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999) (citations omitted). Such companies are liable under § 1983 "*only* when an official policy or custom of the corporation causes the alleged deprivation of federal rights." *Id.* Because Oxendine has neither alleged nor provided evidence to show that Wexford had a policy or custom that caused the alleged deprivation of his constitutional rights, the claim against Wexford is dismissed.

## III. Eighth Amendment

The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. amend. VIII. An inmate's Eighth Amendment rights are violated when there is "deliberate indifference to [his] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). A deliberate indifference claim has both an objective

component—that there objectively exists a serious medical condition and an excessive risk to the inmate's health and safety—and a subjective component—that the official subjectively knew of the condition and risk. *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1978) (holding that an official must have "knowledge" of a risk of harm, which must be an "objectively, sufficiently serious").

To be objectively "serious," the condition must be "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Jackson*, 775 F.3d at 178 (quoting *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008)). However, deliberate indifference "does not require proof that the plaintiff suffered an actual injury." *Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 210 (4th Cir. 2017). Instead, it is enough that the defendant's actions exposed the plaintiff to a 'substantial *risk* of serious harm.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

As for the subjective component, "[a]n official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively knows of and disregards an excessive risk to inmate health or safety." *Jackson*, 775 F.3d at 178 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)) (internal quotation marks omitted). "[I]t is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Id.* (citations omitted). "[M]any acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Id.* Thus, "[d]eliberate indifference is "more than mere negligence, but less than acts or omissions done for the very purpose of causing harm or with knowledge that harm will result." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (internal alterations omitted). Under this standard, a mere disagreement between an inmate and a

physician over the appropriate level of care does not establish an Eighth Amendment violation absent exceptional circumstances. *Id.*

The record in this case establishes that there has been no attempt by Dr. Sisay or other members of the prison medical staff to ignore or recklessly disregard a serious medical need suffered by Oxendine. To the contrary, the record demonstrates Dr. Sisay and the other medical staff consistently responded to Oxendine's medical complaints dating back to February 2014, provided medicine and dietary supplements for his chronic constipation, and prescribed pain medication to ease his symptoms. Moreover, they performed diagnostic testing before referring him to outside specialists to treat his abdominal pain, ultimately resulting in surgery.

The right to treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical *necessity* and not simply that which may be considered merely desirable." *Bowring v. Godwin,* 551 F.2d 44, 47-48 (4th Cir. 1977). Here, although it would have been preferable if Oxendine's cholecystitis had been diagnosed earlier such that the surgery that relieved most of his symptoms could have occurred sooner, the record of consistent medical attention to address Oxendine's symptoms establishes that prison medical staff did not deliberately fail to provide treatment. Even if Oxendine could establish that some of his complaints were left unaddressed, that his medical condition was initially misdiagnosed, or that his surgery was temporarily delayed because of Dr. Sisay's failure to answer a phone call, an "inadvertent failure to provide adequate medical care" does not amount to deliberate indifference. *Estelle,* 429 U.S. at 105-06 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.").

As for Oxendine's post-surgery treatment, Oxendine's claim that his diet was supposed to be changed after surgery, but was not actually changed until August 2015, does not provide sufficient facts to establish that Defendants, rather than prison officials, had control over the meals provided to Oxendine, or that their conduct relating to the food provided to Oxendine establishes deliberate indifference to a serious medical need. Oxendine also asserts that his hernia requires surgery and additional treatment. Dr. Sisay, however, arranged for Oxendine to be evaluated for possible hernia surgery, and he concluded both that it is not at the level of severity to warrant surgery and that the level of post-surgical pain management provided is appropriate. Thus, Oxendine's claim amounts to another disagreement between the inmate and his physician over the appropriate level of care, which does not establish an Eighth Amendment violation absent exceptional circumstances. *Scinto*, 841 F.3d at 225. Oxendine has not identified, let alone provided evidence of, any exceptional circumstances such that his disagreement over the appropriate level of care rises to an Eighth Amendment violation. Accordingly, Defendants are entitled to summary judgment on all claims.

## CONCLUSION

For the foregoing reasons, Defendants' Motion is GRANTED. A separate Order shall issue.

Date: August 14, 2017

THEODORE D. CHUANG
United States District Judge